UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FELIPE JR. OLVERA, et al.,<br><br>Defendants. | No. 2:18-cv-02467 MCE AC<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, G & G Closed Circuit Events, LLC, has the "exclusive nationwide commercial distribution (closed-circuit) rights to *Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship Fight Program*, telecast nationwide on Saturday, September 16, 2017" ("the Program"). Complaint (ECF No. 1) ¶ 16. Plaintiff's complaint alleges that defendants unlawfully intercepted the Program and showed it in their business establishment to customers. Id. at ¶ 19. Plaintiff seeks a default judgment. ECF No. 12. Plaintiff served the notice and motion on defendants. ECF No. 12 at 4. Defendants did not respond, and the matter was taken under submission. ECF No. 14.

## I. BACKGROUND

Plaintiff filed its complaint against (1) Felipe Jr. Olvera, individually and d/b/a Plush Sacramento, and (2) Antigua Cantina Grill, LLC, d/b/a Plush Sacramento, on September 10,

1

2019. ECF No. 1. Plaintiff alleges violations of (1) and (2) The Communications Act of 1934, as amended, 47 U.S.C. §§ 553 & 605, (3) Conversion, and (4) Cal. Bus. & Prof. Code § 17200. On April 4, 2019, plaintiff filed proof of service on both defendants. ECF Nos. 8 & 9. On August 28, 2013 and August 30, 2013, plaintiff properly served both defendants by substituted service pursuant to Cal. Civ. Proc. Code § 415.20(b), as permitted by Fed. R. Civ. P. 4(e)(1). See ECF Nos. 8 & 9. Plaintiff left the summons and complaint with a person apparently in charge, at defendants' business at 1424 21st St., Sacramento, CA 95811, and subsequently mailed the items to the same address. ECF Nos. 8 & 9.

On July 26, 2019, the Clerk entered a default against both defendants. ECF No. 11. On February 19. 2020, plaintiff filed the current motion for a default judgment to be entered against both defendants. ECF No. 12. Defendants did not respond.

## II. LEGAL STANDARDS

### A. Motion for Default Judgment

It is within the sound discretion of the district court to grant or deny an application for default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The court exercises caution in exercising this discretion, fully aware of the seventh factor, "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." See id.

"'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). However, "necessary facts not contained in the pleadings,

////

and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

### B. The Communications Act of 1934

Plaintiff sues under 47 U.S.C. §§ 553 and 605. Both sections are provisions of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-622.

Section 553 prohibits the unauthorized interception of "any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). The court is authorized to award damages measured by plaintiff's "actual damages" along with "any profits" defendants made by the violation, as well as statutory damages of $250 to $10,000. 47 U.S.C. § 553(c)(3)(A)(i), (ii). If the violation was willful and done for "commercial advantage or private financial gain," the court can add up to $50,000 in addition to the actual or statutory damages. Id. § 553(c)(3)(B).

Section 605 "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)). "[T]he 'communications' protected by § 605(a) include satellite television signals." Id.

> [L]iability under section 605 requires proof that a defendant has "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff."

California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting National Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981)).[1]

The court is authorized to award the same damages available for violation of Section 553, except that the minimum statutory damages is $1,000, and the court may add $100,000 in enhanced statutory damages if the violation was willful and for commercial or private financial gain. See 47 U.S.C. § 605(e)(3)(C)(i)(I), (II), (ii).

////

---

[1] Plaintiff here is not alleged to have "transmitted" the Program, but it was the exclusive licensee of the (unidentified) transmitter. It has standing to sue as an "aggrieved person" under the statute. See 47 U.S.C. § 605(d)(6) ("aggrieved person" includes "any person with proprietary rights in the intercepted communication").

3

III. ANALYSIS

Given defendants' complete failure to participate in this lawsuit, the only Eitel factors that need real discussion here are the merits of the claim, including the sufficiency of the complaint, and the sum of money at stake in the action. There is no "prejudice" to defendants from granting the default judgment since they have been given the opportunity to participate in the lawsuit. There is no dispute regarding the events at issue; defendants did not answer, respond to the motion for default judgment, or otherwise appear to contest plaintiff's allegations. Defendants have offered no excuse for their lack of participation, and the case cannot be tried without defendants' participation.

A. The Merits

1. 47 U.S.C. § 605

Plaintiff seeks entry of default judgment on its claim for violation of 47 U.S.C. § 605(a). The complaint alleges that Plaintiff held the exclusive right to broadcast the Program. Complaint ¶ 16. It further alleges that defendants unlawfully intercepted the broadcast of the Program and showed it at their commercial establishment in Citrus Heights, California located at 7942 Arcadia Drive, Citrus Heights, California 95610, willfully and for increased profits for that establishment. Complaint ¶¶ 19-20. These facts, taken as true pursuant to TeleVideo and Geddes, establish defendants' violation of 47 U.S.C. § 605, and plaintiff's entitlement to statutory damages.

Plaintiff does not allege any amount of actual damages in its complaint, and in its brief for default judgment, plaintiff elects to seek only statutory damages. Application for Default Judgment ("Motion") at 10-12. Plaintiff argues that the statute is intended to deter this type of "piracy." Motion at 14.[2] Accordingly, plaintiff seeks "$10,000 in statutory damages and $50,000 in enhanced statutory damages, for a total statutory award of $60,000." Id.

District courts consider many factors in assessing statutory damages under the Communications Act. Courts should assess an amount sufficient to deter but not so great as to destroy the defendant business. See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d

---

[2] The court notes that the statute not only creates a private right of action for the aggrieved party, it also makes such piracy a felony, punishable by $50,000 and 2 years in prison for the first offense. See 47 U.S.C. § 605(e)(2) (if done for commercial or private financial gain).

4

347, 350 (9th Cir. 1999). The amount of money the defendant would have had to pay the plaintiff to broadcast the program lawfully is also relevant. Id. An enhanced statutory damages award may be warranted where the defendant engaged in promotional advertising or charged a premium for food or drinks. J & J Sports Productions, Inc. v. Sorondo, 2011 WL 3917391 at *4 (E.D. Cal. 2011) (Snyder, M.J.). It is also relevant whether the customers were present primarily to watch the broadcast or had come for another purpose while the program was being aired, and whether the defendants were "repeat offenders." Id. The statutory maximum award is inappropriate "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight." Don King Productions/Kingvision v. Maldonado, 1998 WL 879683 (N.D. Cal. 1998). In past cases, the undersigned and other magistrate judges in this district have considered and weighed some or all of these factors, and have recommended awards of statutory damages according to the totality of the relevant circumstances.[3]

Here, plaintiff attests that defendants would have had to pay $12,500 to broadcast the Program lawfully. Motion at 16. Plaintiff has submitted an affidavit from its investigator, who visited defendants' establishment the night of the Program. ECF No. 12-3. The affidavit establishes that there was a $30.00 cover charge on the night of the broadcast; the investigator bought beer; the establishment had eleven mounted flat screen televisions and a large projection televisions showing a fight with an "HBO PPV" logo in the corner and no cable box visible; the capacity of the establishment is about 500 people; and between 53 and 62 patrons were present at any given time while the investigator was in the establishment. Id. at 4.

////

---

[3] See, e.g., J & J Sports Productions, Inc. v. Valencia, 2014 WL 2918884 (E.D. Cal. 2014) (Claire, M.J.) (in similar circumstances, recommending statutory damages of $5,000, and no enhanced statutory damages); J & J Sports Productions, Inc. v. Torres, 2013 WL 417748 (E.D. Cal. 2013) (Claire, M.J.) (in similar circumstances, but where defendant was alleged to be a serial repeat offender, recommending statutory damages of $5,000.00 and enhanced damages of $25,000); J & J Sports Productions, Inc. v. Rodriguez, 2010 WL 796942 (E.D. Cal. 2010) (Drozd, M.J.) (in similar circumstances, recommending combined statutory and enhanced damages totaling $5,000); see also, Joe Hand Promotions, Inc. v. Carranza, 2009 WL 4254460 (E.D. Cal. 2009) (Beck, M.J.) (where plaintiff's investigator found the establishment had "approximate capacity of 250 persons," was located in "a relatively urban city," had "nine flat LCD televisions and one big screen projector," and had a "$10.00 cover charge," recommending $10,000.00 in statutory damages and an additional $90,000.00 in enhanced damages).

Here, there is no evidence of promotional advertising or repeat offender status, and no evidence that defendants charged a premium for drinks or food in relation to the broadcast. However, the broadcase set-up itself (televisions showing the "HBO PPV" logo and no cable box visible) indicates willfulness. The relatively high cover charge, particularly in light of the venue's capacity and the number of screens, establishes that defendants acted for commercial or financial gain. Accordingly, enhanced statutory damages are appropriate.

Having weighed all the above factors, the undersigned will recommend granting plaintiff's request for statutory damages of $10,000 plus enhanced statutory damages of $50,000. The court notes that this assessment, which awards half the maximum enhanced statutory damages available under Section 605, accounts for the willfulness of the violation and pursuit of commercial gain, while also recognizing the absence of repeat offender status and the lack of advertising.

### 2. 47 U.S.C. § 553

Plaintiff states a claim under § 553 but acknowledges that it may only recover under one section of the Communications Act, and makes its argument for damages under § 605. ECF No. 12-1 at 8, n.1. The undersigned will recommend no damages under this provision.

### 3. Conversion

Plaintiff also brings a cause of action for conversion. In California, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1581 (2005) (internal quotation marks omitted); see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." Gilman v. Dalby, 176 Cal. App. 4th 606, 615, n. 1 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. See Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995); see also

DIRECTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

In this case, defendants were displaying the Program, operating a midsize to large establishment, and charging for entry. Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possession of the property at the time of the conversion. Declaration of Nicolas J. Gagliardi at ¶ 3. Defendants did not legally purchase the Program, which constituted defendants' conversion by a wrongful act or disposition of property rights. Id. at ¶ 7. Finally, plaintiff has submitted testimony that the commercial license fee for an establishment similar in size to defendants for the program would have been $12,500. Id. at ¶ 8. Thus, Plaintiff is entitled to damages for conversion in the amount of $12,500.00.

B. Sum of money at stake

Plaintiff requests statutory and enhanced statutory damages totaling $60,000, less than the maximum available under the Communications Act, as well as $12,500.00 in conversion damages, plus costs and reasonable fees as mandated by § 605. Because the court finds these damages well related to the violations of law at issue and not excessive in light of the venue and event description, the sum of money at stake weighs in favor of default judgment.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 12) be GRANTED;

2. The court enter judgment against defendant on plaintiff's claims brought pursuant to 47 U.S.C. § 605 and the tort of conversion;

3. The court award to plaintiff statutory and enhanced damages in the amount of $60,000.00 for the violation of § 605 and $12,500.00 in damages for the tort of conversion; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one (21)

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen (14) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 27, 2020

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE